IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MIDWEST FINANCIAL HOLDINGS, LLC, RICK VOGL, and MAX CARNEY, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 07-3156 |
| P&C INSURANCE SYSTEMS, INC., | ) ) ) | |
| Defendant. | ) | |

<u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This cause is before the Court on Defendant's Motion to Dismiss and Compel Arbitration (d/e 9) and Plaintiffs' Response to Defendant's Motion to Dismiss and Compel Arbitration (d/e 11). For the reasons stated below, the Motion is denied.

<u>FACTS</u>

Plaintiff Midwest Financial Holdings, LLC (Midwest) sells insurance products throughout the country.[1] Plaintiff Max Carney works as Midwest's

---

[1] Unless otherwise noted, all facts are drawn from the allegations in the Complaint (d/e 1).

1

Chief Executive Officer, and Plaintiff Rick Vogl is a Midwest employee. Defendant P&C Insurance Systems, Inc. (PCIS) develops and licenses computer software products.

On October 8, 2003, Midwest entered into Software License and Software Maintenance Agreements (the Agreements) with PCIS. See Defendant's Motion to Dismiss and Compel Arbitration, Exhibit A, part 1, Software License Agreement, part 3, Software Maintenance Agreement. Under the Software License Agreement, PCIS granted Midwest a license to use its "MPS/Worker's Comp" program, described as a "client/server-based system for corporate workman's compensation applications." Id. at part 2, page 10. Under the Software Maintenance Agreement, PCIS agreed to "perform all reasonably necessary maintenance services to the System (including adjustments, repairs and replacements) caused by normal wear and tear and/or defects in workmanship, to keep the System in reasonable working order." Id. at part 3, page 1. Carney signed the Agreements on behalf of Midwest, and PCIS's CEO, Michael Loizou, signed for PCIS. Id. at part 1, Software License Agreement, page 9 & part 3, Software Maintenance Agreement, page 6.

PCIS advertises its products on a company web site. At some point,

2

PCIS posted an endorsement, attributed to Carney, of its products and services. Carney did not consent to this endorsement, and Plaintiffs allege it was false. PCIS also posted an undated press release containing another endorsement, attributed to Vogl. This endorsement stated:

> According to Rick Vogl, IT coordinator at Midwest Insurance Companies, "We have really benefitted from PCIS' integration with ImageRight™. All our workflow is automated. Incoming mail, faxes and emails are indexed and automatically assigned to claims for underwriting task lists. There is no need to touch or handle paper."

See Complaint, at 3. Plaintiffs alleges this endorsement, and an identical one included in a PCIS Spring 2005 newsletter, are false. Carney and Midwest's counsel wrote letters to PCIS requesting that it remove all references to Midwest and its employees from marketing materials, but PCIS did not comply.

On June 18, 2007, Plaintiffs filed their Complaint, which raises four counts, two of which arise under federal law and two of which are brought as supplemental claims. In Count I, Midwest alleges that PCIS violated the Lanham Act by using and continuing to use Midwest's trademark in connection with goods and services offered in interstate commerce without permission. See 15 U.S.C. § 1125(a). In Count II, Midwest alleges that

3

PCIS's use of its name and trademark without permission violated the Illinois Uniform Deceptive Trade Practices Act. See 815 ILCS 510/1, *et seq*. In Count III, Vogl raises a common law misappropriation of identity claim against PCIS. In Count IV, Carney also alleges a common law misappropriation of identity claim against PCIS.

PCIS has moved to dismiss the Complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiffs are bound to pursue their claims in arbitration only. See Defendant's Motion to Dismiss and Compel Arbitration, at 1. The Agreements contain nearly identical arbitration clauses:

> **Governing Law; Forum; Arbitration**. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to principles of conflicts of law or choice of law (including international law). Any controversy, dispute or claim arising out of or relating to this Agreement (including, without limitation, whether a controversy, dispute or claim is subject to arbitration), or the breach thereof, shall be resolved by arbitration under the Commercial Rules of the American Arbitration Association. The arbitration will take place in New York, New York, U.S.A. The arbitration decision and award shall be final and binding and not subject to review in any court of law, and may be entered in any court of competent jurisdiction. Service of a petition to confirm the arbitration award may be made by Federal Express or another express courier service to the other party in accordance with Section [113.6 of the Software License Agreement and 9.6 of the Software Maintenance Agreement]

4

hereof.

Id. at Exhibit A, part 1, Software License Agreement, ¶ 13.12 & part 3, Software Maintenance Agreement, ¶ 9.12.  PCIS also requests an Order under the Federal Arbitration Act (FAA) compelling Plaintiffs to arbitrate their claims.  Plaintiffs argue that the arbitration clauses do not apply to their claims.

## ANALYSIS

PCIS's Motion raises a complicated set of issues under the FAA.  The Court first addresses PCIS's arguments for dismissal and then its request for an order compelling arbitration.  For the reasons stated below, the Court stays this action pending arbitration of Counts I and II and denies PCIS's request for an order compelling arbitration.

I.   DISMISSAL

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the Court must accept as true all well-pleaded factual allegations and draw reasonable inferences in the plaintiff's favor.  Ezekiel v. Michel, 66 F.3d 894, 897 (7th Cir. 1995).  Where the defendant questions the jurisdictional allegations, the plaintiff must prove that the jurisdictional requirements have been met.  Kontos v. United States Dept. of Labor, 826 F.2d 573, 576

(7th Cir. 1987). On a Rule 12(b)(1) motion, the Court may consider evidence outside the Complaint, such as the Agreements submitted by Midwest. See Capitol Leasing Co. v. FDIC, 999 F.2d 188, 191 (7th Cir. 1993). Because Plaintiffs have not contested the validity or enforceability of the Agreements, the Court will consider them.

    A.    <u>Arbitrability of the Suit</u>

The Agreements are key to the initial issue here: whether the arbitration clauses in the Agreements cover this suit. The FAA provides that an arbitration clause in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983). But, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986).

Here, the Agreements explicitly bind only PCIS and Midwest. See Defendant's Motion to Dismiss and Compel Arbitration at Exhibit A, part

1, <u>Software License Agreement</u>, page 1 & part 3, <u>Software Maintenance Agreement</u>, page 1 (defining PCIS as the Licensor and Midwest as the Licensee).  Vogl never signed these Agreements, and from the Agreements, it appears Carney did so only on behalf of Midwest.  On their faces, these Agreements include no provisions binding employees of either company generally or Vogl or Carney particularly.  Neither the Plaintiffs nor the Defendant address the issue here, but it appears Vogl and Carney are non-signatories.

As non-signatories, Vogl and Carney are not bound by the Agreements.  Unless ordinary rules of contract and agency provide a basis for requiring a non-signatory to arbitrate, a non-signatory is not bound by an arbitration agreement between other parties.  <u>Zurich American Ins. Co. v. Watts Industries, Inc.</u>, 417 F.3d 682, 687 (7th Cir. 2005); <u>Thomson-CSF, S.A. v. Am. Arbitration Ass'n</u>, 64 F.3d 773, 776 (2nd Cir. 1995).  Five bases for binding non-signatories exist: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference.  <u>Zurich Am. Ins.</u>, 417 F.3d at 687; <u>Thomson-CSF</u>, 64 F.3d at 776-79.  PCIS has articulated no theory under which Vogl or Carney can be bound, and the facts alleged do not support one. Accordingly, the arbitration clauses in the Agreements do

7

not apply to Vogl's and Carney's claims.

They do, however, apply to Midwest's -- at least to the issue of whether its claims are subject to arbitration. A court may not deny a party's request to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960). Ordinarily, the question of arbitrability (whether the parties are bound to arbitrate a particular dispute) is an issue for judicial determination, but where the parties have "clearly and unmistakably" provided otherwise, the issue goes to the arbitrator. See AT&T Technologies, 475 U.S. at 649.

PCIS asserts that this suit "aris[es] out of or relat[es] to" the Agreements, and thus is subject to their arbitration clauses. Defendant's Motion to Dismiss and Compel Arbitration at Exhibit A, part 1, Software License Agreement, ¶ 13.12 & part 3, Software Maintenance Agreement, ¶ 9.12. The Seventh Circuit has held that the language "'arising out of' reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se." Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Intern, Ltd., 1 F.3d 639,

642 (7th Cir. 1993).  But, this Court need not decide whether Midwest's claims have their origin or genesis in the Agreements, because Midwest and PCIS agreed that "[a]ny controversy, dispute or claim arising out of or relating to [the Agreements] (including, without limitation, whether a controversy, dispute or claim is subject to arbitration), or the breach thereof, shall be resolved by arbitration."  Defendant's Motion to Dismiss and Compel Arbitration at Exhibit A, part 1, Software License Agreement, ¶ 13.12 & part 3, Software License Agreement, ¶ 9.12.  Midwest and PCIS clearly and unmistakably provided that disputes over this very issue -- arbitrability -- should be decided by an arbitrator.

Midwest argues that consigning all disputes over arbitrability to an arbitrator would be "nonsensical," because it would result in arbitration over any and all disputes between Midwest and PCIS, regardless of whether they relate in any way to the Agreements.  Response to Defendant's Motion to Dismiss and Compel Arbitration, at 2.  For example, Midwest argues, under this interpretation, if a Midwest employee and a PCIS employee are involved in an auto accident, any dispute over the accident must go to arbitration.

Midwest's argument is not persuasive.  First, as noted above, generally

9

only signatories to contracts are bound by their terms. Here, no employees signed the Agreements in their personal capacities, so disputes between individual employees over issues such as auto accidents are not covered. Moreover, even regarding disputes between Midwest and PCIS, if neither party asserts that the Agreements' arbitration clauses apply, no dispute over arbitrability exists, and the arbitration clauses are not triggered. Finally, even if PCIS were to insist that every conceivable dispute between it and Midwest is arbitrable, Midwest has only itself to blame for the resulting aggravation. "[C]ontracting parties control their own fate when it comes to deciding which disputes to consign to arbitration." Sweet Dreams, 1 F.3d at 643. If Midwest did not want disputes over arbitrability governed by an arbitrator, it should not have agreed to this term.

Thus, the Court holds that whether Midwest's claims against PCIS are subject to arbitration is itself an issue for arbitration. Determining whether dismissal of Midwest's claims, or of Vogl's and Carney's claims, is appropriate leads to another set questions, however.

B. <u>Jurisdiction</u>

PCIS urges the Court to dismiss all claims covered by the arbitration clauses under Rule 12(b)(1), but the Court finds that dismissal would be

improper. District courts within this Circuit have adopted PCIS's theory and dismissed cases for lack of subject matter jurisdiction where an arbitration clause applies. See, e.g., Lamb v. General Elec. Consumer & Industrial, 2006 WL 2228962, at *8 (N.D. Ind. Aug. 3, 2006). Yet, these cases contradict Seventh Circuit precedent. See LaSalle Business Credit, L.L.C. v. GCR Eurodraw S.p.A., 2004 WL 1880004, at *4 (N.D. Ill. Aug. 18, 2004) (noting that district court decisions dismissing actions subject to arbitration contradict Seventh Circuit law).

In Kroll v. Doctor's Associates, Inc., the Seventh Circuit prohibited dismissal based on the applicability of an arbitration agreement. Kroll, 3 F.3d 1167, 1172 (7th Cir. 1993). The Seventh Circuit held that courts have no power to dismiss actions that must proceed to arbitration; instead, courts should stay the cases under the FAA until arbitration is complete. Id.; see also 9 U.S.C. § 3. Similarly, in Tice v. American Airlines, Inc., the Seventh Circuit modified a district court judgment from dismissal to a stay:

> [W]e think that rather than dismiss the present suit the district judge should have stayed it to await the outcome of arbitration in order to spare the parties the burden of a second litigation should the arbitrators fail to resolve the entire controversy. That is the normal procedure when an arbitrable issue arises in the course of a federal suit. See 9 U.S.C. § 3. As we have emphasized in a variety of contexts, district courts should retain

> jurisdiction over a suit that must be interrupted for reference of an issue to another forum rather than dismiss it if, should it be dismissed, there might later be grounds for reinstating it.

Tice, 288 F.3d 313, 318 (7th Cir. 2002).

In a third case, however, the Seventh Circuit approved of a district court's decision to dismiss an action subject to arbitration in another district under Rule 12(b)(3), for lack of venue. Continental Cas. Co. v. Am. Nat'l Ins. Co., 417 F.3d 727, 735 (7th Cir. 2005). The Court noted its previous holdings that a stay rather than dismissal is appropriate but failed to explain how or whether dismissal under 12(b)(3) fits within that precedent. Id. at 732 n.7. Yet, the Court declined to approve of dismissal under 12(b)(1). Id. at 732-33 & nn.5-6.

This Court concludes, then, that the Seventh Circuit's prohibition on dismissal under 12(b)(1) at least remains in force. Because PCIS and Midwest contracted for arbitration in New York, New York, USA, dismissal under 12(b)(3) for lack of venue may have been proper, but PCIS did not raise such an argument. By not raising it in its initial pleading, PCIS waived any objection to venue. See Frietsch v. Refco, Inc., 56 F.3d 825, 830 (7th Cir. 1995). Thus, the Court denies PCIS's request for dismissal based on the arbitration clauses. Because PCIS has established that an arbitration

12

agreement applies, however, the Court stays Midwest's claims against PCIS "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; see also Volkswagen of America, Inc. v. Sud's of Peoria, Inc., 474 F.3d 966, 971 (7th Cir. 2007) ("For arbitrable issues, a § 3 stay is mandatory."). If the arbitrator determines that Midwest's claims against PCIS are not subject to arbitration, or if issues remain after arbitration of the claims, this Court will lift its stay.

With that settled, the Court must decide what to do about Vogl's and Carney's claims. It cannot stay their claims along with Midwest's under the FAA, because Vogl and Carney are not parties to the agreement to arbitrate. See IDS Life Ins. Co. v. SunAmerica, Inc., 103 F.3d 524, 529 (7th Cir. 1996) ("Although not expressly so limited, section 3 assumes and the case law holds that the movant for a stay, in order to be entitled to a stay under the arbitration act, must be a party to the agreement to arbitrate, as must be the person sought to be stayed."); DSMC Inc. v. Convera Corp., 349 F.3d 679, 684 (D.C. Cir. 2003). The Court can, however, stay these claims as a matter of its discretionary control over its docket. See IDS Life Ins., 103 F.3d at 529 ("Parallel proceedings, one judicial, one arbitral, are governed instead, . . . by the normal rules for parallel-proceeding

abstention."); DSMC, 349 F.3d at 684 (citing Moses H. Cone Mem'l Hosp., 460 U.S. at 20 n.23). Moreover, it can do so *sua sponte*. See Kircher v. Putnam Funds Trust, 2007 WL 1532116, at *2 (S.D. Ill. May 24, 2007) (citing Landis v. North Am. Co., 299 U.S. 248, 254 (1936)).

In its discretion, the Court finds a stay pending the result of arbitration of Midwest's claims appropriate. Vogl's and Carney's claims are common law claims brought pursuant to 28 U.S.C. § 1367(a)'s rules regarding supplemental jurisdiction. This Court has no independent jurisdiction over their claims.[2] If arbitration resolves Midwest's claims entirely and this Court then dismisses them, it may find it appropriate to decline to exercise supplemental jurisdiction over Vogl's and Carney's claims. See 28 U.S.C. § 1367(c)(3). Additionally, the Court finds that, given the interrelated nature of all four claims, allowing Vogl's and Carney's claims to go forward while arbitration proceeds could create issue preclusion problems. See Nakamura Trading Co. v. Sankyo Corp., 2006 WL 1049608, at *5 (N.D. Ill. April 19, 2006). Thus, the Court *sua sponte* stays Vogl's and Carney's claims pending arbitration of Midwest's claims against PCIS.

II.    ORDER TO COMPEL ARBITRATION

---

[2] Diversity jurisdiction is not asserted in the Complaint.

Finally, there is the matter of whether the Court should issue an order compelling Midwest to arbitrate, as PCIS requests. Under the FAA's Section 4:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

9 U.S.C. § 4. Note that the statute requires a court to order arbitration in the "manner provided for in such agreement." Id. Here, the arbitration clauses provide for arbitration in New York, New York, USA. The Seventh Circuit "has concluded that where the arbitration agreement contains a forum selection clause, only the district court in that forum can issue a § 4 order compelling arbitration. Otherwise, the clause of § 4 mandating that the arbitration and the order to compel issue from the same district would be meaningless." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer, 49 F.3d 323, 327 (7th Cir. 1995).

This Court cannot compel Midwest to arbitrate in New York, but

because Section 4 requires arbitration in the manner provided for in the arbitration clause, it also cannot compel Midwest to arbitrate in this district. Thus, the Court denies PCIS's Motion for an order compelling arbitration. If PCIS wishes to compel Midwest to arbitrate, it must file a § 4 petition in the Southern District of New York.

THEREFORE, Defendant's Motion to Dismiss and Compel Arbitration (d/e 9) is DENIED. The Court denies PCIS's request to dismiss Plaintiffs' Complaint based on lack of subject matter jurisdiction, but it stays the action pending arbitration of Counts I and II. The Court also denies PCIS's request for an order compelling arbitration. Midwest and PCIS are directed to file reports, with the Court and all other parties, every 90 days to advise of the status of the arbitration.

IT IS THEREFORE SO ORDERED.

ENTER:  December 7, 2007

       FOR THE COURT:

                                         s/ Jeanne E. Scott
                                         JEANNE E. SCOTT
                                         UNITED STATES DISTRICT JUDGE